**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NASIM GHEBARI, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 1:19-cv-01218 |
| NATIONAL GAS AND ELECTRIC, LLC, and JOHN DOES 1-10, | DEMAND FOR JURY TRIAL |
| Defendants. | |

## <u>COMPLAINT</u>

**NOW COMES** Nasim Ghebari ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd., complaining as to the conduct of National Gas and Electric, LLC ("Defendant") as follows:

### NATURE OF THE ACTION

1.  Plaintiff brings this action seeking redress for violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227, and for and violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1.

### JURISDICTION AND VENUE

2.  Subject matter jurisdiction is conferred upon this Court by the TCPA, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3.  The Court has supplemental jurisdiction over the state law ICFA claim under 28 U.S.C. §1367.

4.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Northern District of Illinois, and a substantial portion of the events or omissions giving rise

to the claims occurred within the Northern District of Illinois, and Plaintiff resides in the Northern District of Illinois.

**PARTIES**

5.  Plaintiff is a natural person over 18-years-of-age who resides in Illinois and is a "person" as defined by 47 U.S.C. §153(39).

6.  Defendant is a Texas limited liability Company with its principle office located at 12140 Wickchester Lane, Houston, Texas 77079. Defendant's registered agent is C T Corporation System., located at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

7.  Defendant John Does 1-10 are other natural or artificial persons that are involved in the allegations described below. Plaintiff does not know who they are.

**FACTS SUPPORTING CAUSES OF ACTION**

8.  In early 2017, Defendant began placing pre-recorded calls to Plaintiff's cellular telephone number (630) XXX-0733.

9.  At all times relevant to the instant action, Plaintiff was the sole subscriber, owner, possessor, and operator of the cellular telephone ending in 0733.

10. Plaintiff has no prior business relationship with Defendant and has *never* consented to receive phone calls to his cellular telephone from Defendant.

11. Plaintiff *never* provided his cellular telephone number to Defendant or otherwise expressly consented to Defendant's phone calls.[1]

12. Immediately after the calls began, Plaintiff answered a phone call to his cellular telephone from Defendant. Plaintiff was greeted by a pre-recorded message stating: "Hello this is your energy

---

[1] Upon information and belief, Defendant obtained Plaintiff's telephone number through a method known as "skip-tracing," whereby telemarketers obtain phone numbers by conducting inquiries upon consumer credit reports or other public record searches.

provider press 1 to be removed from the call list, press 2 to be connected with a representative so as to lower your utility charges." [2]

13. Plaintiff, perplexed by the phone calls, immediately pressed 1 to be removed from Defendant's call list.

14. Despite Plaintiff's request, Defendant continued to place pre-recorded phone calls to Plaintiff's cellular phone without his prior written consent.

15. On or around May 2017, Plaintiff answered another phone call from Defendant and was *again* greeted by Defendant's automated pre-recorded message. This time, Plaintiff pressed 2 to speak with a live representative.

16. Plaintiff connected to a representative and asked Defendant to cease placing calls to his cellular telephone, as Plaintiff was happy with his current energy provider.

17. Notwithstanding Plaintiff's request, Defendant continued to place automated and pre-recorded phone calls to Plaintiff's cellular telephone without his prior consent.

18. From time to time, Plaintiff would answer calls from Defendant and speak with a live representative. As soon as Plaintiff requested information regarding Defendant, the representative would immediately end the call.

19. Plaintiff would attempt to ask Defendant if it had a website, how it obtained Plaintiff's cellular telephone number, and why they continued to place calls to him after he requested Defendant to stop calling his cellular telephone. Each time, a representative would abruptly end the call without answering Plaintiff's questions.

---

[2] At all times relevant, Plaintiff's energy provider is Commonwealth Edison.

20. On April 23, 2018, Plaintiff *again* demanded that Defendant cease placing calls to his cellular telephone.

21. On September 6, 2018, Plaintiff *again* answered a phone call to his cellular phone from Defendant. This time, Plaintiff was greeted by a different automated, pre-recorded message stating: "Congratulations you are qualified to reduce your electric and gas bill, press 1 to be added to our do not call list, or press 2 to speak with a live agent." Bewildered, Plaintiff pressed 2 to speak with a live agent to again request that the phone calls immediately cease.

22. Notwithstanding Plaintiff's numerous requests that Defendant's pre-recorded calls cease, Defendant placed or caused to be placed no less than 67 automated and pre-recorded phone calls between 2017 through the present day. Additionally, in the calls in which Plaintiff did not answer, Defendant would leave Plaintiff a pre-recorded voice mail message.

23. Defendant would leave a pre-recorded message, each of which was approximately 23 seconds in duration. There would be an audible click from the receiver and after a significant pause, a pre-recorded message began by Defendant using an artificial voice requesting Plaintiff to press 1 or to press 2.

24. Defendant placed its unsolicited pre-recorded voice calls to Plaintiff's cellular telephone using an automated telephone dialing system, a system that is commonly used in the telemarketing industry to solicit consumers to purchase their goods or services.

25. Plaintiff's demands that Defendant's phone calls cease fell on deaf ears and Defendant continued its phone harassment campaign.

26. In the calls that Plaintiff did answer, Plaintiff was greeted by a noticeable period of "dead air" followed by a pre-recorded message.

27. Specifically, there would be an approximate 2 second pause between the time Plaintiff said "hello," and the time that the pre-recorded message would play.

28. Moreover, Plaintiff also hears what sounds to be call center noise in the background of Defendant's calls.

29. The phone numbers that Defendant most often uses to contact Plaintiff are (630) 358-6128, (630) 358-6150, (630) 381-4057, (217) 207-2790. (773) 839-7466, (331) 784-3692, (630) 877-2036, (630) 875-7668, (630) 875-2194, (815) 671-1324, (773) 869-3542, and (815) 839-6762 but upon information and belief, it may have used other phone numbers as well.

**DAMAGES**

30. Defendant's harassing phone calls have severely disrupted Plaintiff's daily life and general well-being.

31. Defendant's phone harassment campaign have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity, wasting Plaintiff's time, the increased risk of personal injury resulting from the distraction caused by the phone calls, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, anxiety, loss of concentration, diminished value and utility of telephone equipment and telephone subscription services, the loss of battery charge, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

32. The majority of Defendant's disrupting phone calls to Plaintiff were placed during work hours and severely decreased Plaintiff's work productivity.

33. In addition, each time Defendant placed a telephone call to Plaintiff's cellular telephone, Defendant occupied Plaintiff's telephone number such that Plaintiff was unable to receive other phone calls.

34. Concerned about the violations of his rights and invasion of his privacy, Plaintiff was forced to seek the assistance of counsel to file this action to compel Defendant to cease its unlawful conduct.

### COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

35. Plaintiff restates and realleges paragraphs 1 through 34 as though fully set forth herein.

36. Defendant placed or caused to be placed non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone using prerecorded voice technology without his prior consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

37. Based on the pre-recorded messages Plaintiff heard during the phone calls in which Plaintiff answered, Defendant placed these aforementioned calls to Plaintiff using prerecorded voice technology.

38. Plaintiff does not have any business relationship with Defendant nor has he given it permission to call his cellular telephone.

39. Defendant violated the TCPA by placing frequent unsolicited automated pre-recorded phone calls to Plaintiff's cellular telephone from early 2017 through the present day, using an automated telephone dialing system (ATDS") without his prior express or written consent.

40. Any prior consent, if any, was revoked by Plaintiff's numerous revocations by pressing the number 1 indicating that Plaintiff requested Defendant to add him to its do not call list. Specifically, Plaintiff pressed 1 on no less than 4 occasions. Plaintiff also spoke to representatives of Defendant and requested it to cease all future calls.

41. As pled above, Plaintiff was severely harmed by Defendant's telemarketing calls to his cellular telephone.

42. Upon information and belief, Defendant has no system in place to document and archive whether it has prior express or written consent to contact consumers.

43. Upon information and belief, Defendant knew its telemarketing practices were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's expense.

44. The calls placed by Defendant to Plaintiff were regarding business activities and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

45. Defendant, through its agents, representatives, vendors, independent contractors, subsidiaries, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

46. Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to Plaintiff for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

**WHEREFORE**, Plaintiff, NASIM GHEBARI respectfully requests that this Honorable Court enter judgment in his favor as follows:

    a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

    b. Awarding Plaintiff damages of at least $500.00 per phone call and treble damages pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

    c. Awarding Plaintiff reasonable costs and attorney fees;

    d. Enjoining Defendant from contacting Plaintiff; and

    e. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT III – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT

47. Plaintiff restates and realleges paragraphs 1 through 46 as through fully set forth herein.

48. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

49. Plaintiff is a "person" and a "consumer" as defined in ICFA, 815 ILCS 505/(c) and (e) respectively.

50. Defendant is engaged in commerce in the State of Illinois with regard to Plaintiff. Defendant specializes in soliciting energy services, which is an activity within the stream of commerce and utilized in its regular course of business.

51. Defendant violated 815 ILCS 505/2 by engaging in unfair acts in its attempts to solcit Plaintiff into attaining its energy services.

52. It was unfair for Defendant to relentlessly contact Plaintiff through means of pre-recorded calls and messages when it had no reason or permission to do so. The fact that it was continuously calling Plaintiff without his prior consent is illustrative of Defendant's unfair business practice.

53. It was unfair for Defendant to seek to solicit Plaintiff into signing up for its energy services through relentless harassing phone calls to his cellular telephone without his prior consent attempting to dragoon him into procuring its services.

54. It was unfair for Defendant to place or cause to be placed frequent harassing unsolicited phone calls to Plaintiff's cellular phone, without his prior consent with multiple calls taking place in one day and on back to back days.

55. It was unfair for Defendant to continue placing calls to Plaintiff after he demanded that the calls cease on no less than 7 separate occasions.

56. Defendant's unfair conduct is inherently oppressive as Plaintiff had no choice but to submit to the relentless harassing phone calls to his cellular telephone.

57. Moreover, Defendant's unfair conduct is against public policy because it needlessly subjects consumers to unsolicited calls, resulting in a significant harm in the form of invasion of privacy and nuisance.

58. Upon information and belief, Defendant systematically places harassing phone calls to consumers in Illinois in order to aggressively solicit its services to increase its profitability at the consumers' expense.

59. Upon information and belief, placing harassing phone calls to Illinois consumers who do not legally consent to receive phone calls is an unfair business practice willfully employed by Defendant and is done on a large scale.

60. Additionally, Defendant's unlawful and unfair telemarketing efforts gives it an unfair competitive advantage over businesses that solicit services lawfully (companies who legally place calls with consent, as authorized, and who lawfully cease calling upon requests to stop).

61. As alleged above, Plaintiff was substantially harmed by Defendant's misconduct.

62. An award of punitive damages is appropriate because Defendant's conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of the Plaintiff and consumers, generally, and Plaintiff had no choice but to submit to the never-ending phone calls.

**Plaintiff demands trial by jury.**

Dated: February 18, 2019                              Respectfully Submitted,


/s/ Marwan R. Daher                                  /s/ Omar T. Sulaiman
Marwan R. Daher, Esq.                                Omar T. Sulaiman, Esq.
*Counsel for Plaintiff*                              *Counsel for Plaintiff*
Sulaiman Law Group, Ltd.                             Sulaiman Law Group, Ltd.
2500 Highland Avenue, Suite 200                      2500 Highland Avenue, Suite 200
Lombard, IL 60148                                    Lombard, IL 60148
Telephone: (630) 537-1770                            Telephone: (630) 575-8141
mdaher@sulaimanlaw.com                               osulaiman@sulaimanlaw.com